**NO. 13-4419**
**NO. 13-4431**

In The
**U**nited States Court Of Appeals
For The Fourth Circuit

**GARY THENOR CROMARTIE and DONTE BERNARD BAKER,**

**Appellants,**

**v.**

**UNITED STATES OF AMERICA,**

**Appellee.**

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
———————————————

**JOINT BRIEF OF APPELLANTS**
———————————————

Erek L. Barron
WHITEFORD, TAYLOR
    & PRESTON, LLP
7501 Wisconsin Avenue, Suite 700W
Bethesda, Maryland 20814
Telephone:  (301) 804-3613
Facsimile:  (301) 804-3643
ebarron@wtplaw.com

*Attorney for Appellant Cromartie*

Stuart O. Simms
Matthias L. Niska
BROWN, GOLDSTEIN & LEVY, LLP
120 East Baltimore Street, Suite 1700
Baltimore, Maryland 21202
Telephone:  (410) 962-1030
Facsimile:  (410) 385-0869
sos@browngold.com
mniska@browngold.com

*Attorneys for Appellant Baker*

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................. iii

STATEMENT OF JURISDICTION.....................................................1

STATEMENT OF THE ISSUES..........................................................2

      A.    Donte Baker ............................................................2

      B.    Gary Cromartie .......................................................3

STATEMENT OF THE CASE...............................................................3

      A.    Donte Baker ............................................................3

      B.    Gary Cromartie .......................................................7

STATEMENT OF FACTS ......................................................................8

      A.    Donte Baker ............................................................8

            1.    Offense Conduct and Investigation ..................8

            2.    Charges and Initial Proceedings .......................9

            3.    The Guilty Plea Hearing .................................10

            4.    The Motion to Withdraw Guilty Plea.............14

            5.    The Sentencing Proceeding ............................17

      B.    Gary Cromartie .....................................................19

            1.    The Guilty Plea Hearing .................................19

            2.    The Sentencing Proceeding ............................21

SUMMARY OF THE ARGUMENT AS TO DONTE BAKER ...........................25

STANDARD OF REVIEW AS TO DONTE BAKER ..........................................27

ARGUMENT OF DONTE BAKER.....................................................................27

I.    The District Court's Denial of Mr. Baker's Motion to Withdraw His Guilty Plea Was an Abuse of Discretion.......................................27

    A.    Mr. Baker's Guilty Pleas Were Not Knowing or Voluntary. ...29

    B.    Mr. Baker Was Not Afforded the Close Assistance of Counsel..................................................................................33

    C.    There Was Not an Excessive Delay Between Mr. Baker's Plea and His Withdrawal Motion..............................................37

II.    The District Court's Sentence of Mr. Baker to 480 Months Was Substantively Unreasonable. .................................................40

SUMMARY OF THE ARGUMENT AS TO GARY CROMARTIE....................45

STANDARD OF REVIEW AS TO GARY CROMARTIE ................................45

ARGUMENT OF GARY GROMARTIE................................................................46

    The Trial Court Lacked a Sufficient Factual Basis as to Mr. Cromartie's *Mens Rea* to Accept His Guilty Plea for Conspiracy to Commit Murder in Aid of Racketeering, Substantially Affecting His Rights. ..........................................46

CONCLUSION .......................................................................................................54

REQUEST FOR ORAL ARGUMENT ..................................................................56

RULE 32(A) CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMITATION, TYPEFACE REQUIREMENTS, AND TYPE STYLE REQUIREMENTS....................................................................................................56

# TABLE OF AUTHORITIES

**Cases**

*Bradshaw v. Stumpf*,
545 U.S. 175 (2005).................................................................46

*Brady v. United States*,
397 U.S. 742 (1970).................................................................46

*Coles v. Peyton*,
389 F.2d 224 (4th Cir. 1968) .........................................37

*Gall v. United States*,
552 U.S. 38 (2007)............................................................ passim

*Marzullo v. Maryland*,
561 F.2d 540 (4th Cir. 1977) .........................................36

*North Carolina v. Alford*,
400 U.S. 25 (1970).................................................................46

*Spencer v. United States*,
552 U.S. 1063 (2007)..........................................................34

*United States v. Booker*,
543 U.S. 220 (2005).............................................................40

*United States v. Bowman*,
348 F.3d 408 (4th Cir. 2003) ............................... 38, 39

*United States v. Broce*,
488 U.S. 563 (1989)............................................................46

*United States v. Brooks*,
957 F.2d 1138 (4th Cir. 1992) .....................................50

*United States v. Brown*,
617 F.2d 54, 55 (4th Cir. 1980) ...............................28

*United States v. Carr*,
271 F.3d 172 (4th Cir.2001) .......................................53

*United States v. DeFreitas,*
    865 F.2d 80 (4th Cir.1989) ...........................................................................34

*United States v. DeFusco,*
    949 F.2d 114 (4th Cir. 1991) .......................................................................47

*United States v. Dickerson,* \_\_\_ F. Appx. \_\_\_,
    2013 WL 5996767 (4th Cir. Nov. 13, 2013) ................................................37

*United States v. Doyle,*
    981 F.2d 591 (1st Cir. 1992)................................................................ 38, 39

*United States v. Dyess,*
    478 F.3d 224 (4th Cir. 2007) .............................................................. 34, 35

*United States v. Fountain,*
    777 F.2d 351 (7th Cir. 1985) .......................................................................47

*United States v. Lambey,*
    974 F.2d 1389 (4th Cir. 1992) ............................................................ 30, 33

*United States v. Martinez,*
    277 F.3d 517 (4th Cir. 2002) .......................................................................47

*United States v. Mastrapa,*
    509 F.3d 652 (4th Cir. 2007) ................................................ 45, 47, 52, 53

*United States v. Moore,*
    931 F.2d 245 (4th Cir. 1991) ............................................................. passim

*United States v. Morace,*
    594 F.3d 340 (4th Cir. 2010) .......................................................................40

*United States v. Olano,*
    507 U.S. 725 (1993)............................................................................ 46, 52

United States v. Pauley,
    511 F.3d 468 (4th Cir. 2007) ............................................................. passim

*United States v. Puckett,*
    61 F.3d 1092 (4th Cir. 1995) ............................................................. 28, 29

*United States v. Strickland*,
 245 F.3d 368 (4th Cir. 2001) .................................................................. 36, 46

United States v. Ubakanma,
 215 F.3d 421 (4th Cir. 2000) ............................................................ 27, 34, 39

*United States v. Wilson*,
 81 F.3d 1300 (4th Cir. 1996) ....................................................................29

*Walton v. Angelone*,
 321 F.3d 442 (4th Cir.2003) .....................................................................47

**Statutes**

18 U.S.C. § 1959 .................................................................................. 1, 7, 9

18 U.S.C. § 1962 .................................................................................. 1, 7, 9

18 U.S.C. § 2 ............................................................................................1

18 U.S.C. § 3231 .......................................................................................1

18 U.S.C. § 3553 ............................................................................... passim

18 U.S.C. § 3557 .......................................................................................1

18 U.S.C. § 3742 .......................................................................................1

18 U.S.C. § 846 .........................................................................................9

18 U.S.C. § 924 ............................................................................... 1, 10, 13

21 U.S.C. § 841 .......................................................................................48

21 U.S.C. § 846 ......................................................................................1, 7

28 U.S.C. § 1291 .......................................................................................1

28 U.S.C. § 2255 .....................................................................................37

**Rules**

Fed. R. Crim. P. 11............................................................... 11, 28, 45, 47

Fed. R. Crim. P. 32...................................................................................28

# STATEMENT OF JURISDICTION

This case arose in the United States District Court for the District of Maryland, Northern Division. Under 18 U.S.C. § 3231, the District Court has original jurisdiction over criminal offenses against the laws of the United States. Appellants Gary Thenor Cromartie and Donte Bernard Baker were charged in a Second Superseding Indictment[1] for violations of 18 U.S.C. § 1962 (d), 18 U.S.C. § 1959(a)(5), and 21 U.S.C. § 846. Baker was also charged with violating 18 U.S.C. § 924 (c) and 18 U.S.C. § 2.

This Court has jurisdiction over an appeal from a final judgment of the District Court pursuant to 28 U.S.C. § 1291 and 18 U.S.C. § 3742 (a).  In addition, pursuant to 18 U.S.C. §§ 3557 and 3742 (a) (1), this Court has jurisdiction to review a sentence if a defendant is alleging that it was imposed in violation of law.

On May 21, 2013, the District Court entered judgment against Donte Bernard Baker.[2]  A Notice of Appeal[3] was timely filed by Mr. Baker on May 21, 2013.

On May 23, 2013, the District Court entered judgment against Gary Thenor Cromartie.[4] A Notice of Appeal[5] was timely filed by Mr. Cromartie on May 24, 2013.

---

[1] Joint Appendix ("JA") 059-070.  Unless otherwise specified, JA refers to the Unsealed Joint Appendix.
[2] JA 951.
[3] JA 950.

On June 4, 2013, this Court consolidated the cases of Mr. Cromartie and Mr. Baker for purposes of this appeal.

## STATEMENT OF THE ISSUES

**A.    Donte Baker**

1.    Whether the District Court erred in denying Mr. Baker's motion to withdraw his guilty pleas when those pleas were not knowing and voluntary and when those pleas were entered without the close assistance of counsel because Mr. Baker's communications with counsel were inadequate for him to fully understand the implications of those pleas.

2.    Whether the District Court erred in failing to conduct an evidentiary hearing about the nature and extent of communications between Mr. Baker and his counsel in preparing Mr. Baker for his guilty plea and the voluntariness of that plea.

3.    Whether the District Court erred in issuing Mr. Baker a 480-month sentence without sufficient assessment of Mr. Baker's individual history and characteristics, resulting in a sentence

---

[4] JA 1003.
[5] JA 1009.

that was far greater than the government's recommended punishment.

**B.    Gary Cromartie**

Whether the District Court erred in finding that there was a sufficient factual basis for Mr. Cromartie's guilty plea when the guilty plea statement of facts contained no evidence of Mr. Cromartie having any knowledge of a conspiracy to commit murder in aid of racketeering and when Mr. Cromartie expressed lack of knowledge of the conspiracy.

## STATEMENT OF THE CASE

**A.    Donte Baker**

On December 12, 2010, Cherrie Gammon, an employee of a Baltimore, Maryland nightclub was found dead in a local park by police.[6] At the time of her death, the police were investigating a drug operation allegedly involving Appellants Gary Cromartie, Donte Baker, and others who sold and distributed heroin and cocaine to other sellers and customers.[7]

As a result of information developed by the police during the course of the investigation, Mr. Baker was arrested and initially charged only with state drug and

---

[6] JA 008.
[7] JA 768-769.

3

gun offenses.[8] But the investigation continued, and on August 3, 2011, Baker was

charged in an initial federal indictment with federal gun and drug offenses.[9]

At Mr. Baker's initial detention hearing on August 9, 2011, the Federal

Public Defender was appointed as his counsel.[10] Shortly thereafter, private counsel

was appointed for Mr. Baker under the Criminal Justice Act.[11] On September 23,

2011, Mr. Baker was arraigned on the initial indictment and he entered pleas of not

guilty.[12] Through his first appointed counsel, Mr. Baker filed several motions.[13]

On January 25, 2012, a Superseding Indictment charged Donte Baker and

others with Conspiracy to Participate in a Racketeering Enterprise; Conspiracy to

Commit Murder in Aid of Racketeering; Conspiracy to Distribute and Possession

with Intent to Distribute Controlled Dangerous Substances; and Possession of a

Firearm in Furtherance of a Drug Trafficking Offense.[14] On March 29, 2012,

Mr. Baker entered pleas of not guilty. [15]

On April 17, 2012, Mr. Baker's first privately appointed counsel withdrew

from representation and was replaced by Mr. Baker's second private counsel under

---

[8] JA 034-036.
[9] JA 004; 037.
[10] JA 004.
[11] JA 005.
[12] JA 005.
[13] JA 005; 040-046; 0710-89.
[14] JA 007; 059-070.
[15] JA 008.

the Criminal Justice Act.[16] On June 27, 2012, Mr. Baker was charged in a Second Superseding Indictment with Conspiracy to Participate in a Racketeering Enterprise (Count One); Conspiracy to Commit Murder in Aid of Racketeering (Count Two); Conspiracy to Distribute and Possession with Intent to Distribute Controlled Dangerous Substances (Count Three); and Possession of a Firearm in Furtherance of a Drug Trafficking Offense (Count Four).[17]

Hearings concerning the motions filed by Mr. Baker and the other Defendants were held on September 27, 2012, September 28, 2012, October 31, 2012, and November 1, 2012.[18]

On November 5, 2012, Mr. Baker was re-arraigned and—pursuant to an oral plea agreement—entered pleas of Guilty to Counts One, Two, and Four of the Second Superseding Indictment.[19]

On January 29, 2013, Mr. Baker submitted a *pro se* Motion to Withdraw Plea of Guilty.[20] Proceedings were held concerning the *pro se* motion and the status of Mr. Baker's counsel on February 20, 2013.[21]  On February 26, 2013, Mr. Baker's second counsel under the Criminal Justice Act moved to withdraw

---

[16] JA 008.
[17] JA 060-071.
[18] JA 071-075; 076-086; 087-089; 090-371; 372-537; 538-579; 580-694.
[19] JA 017; 739-793.
[20] JA 014; 794.
[21] JA 015; 805-815.

from representation.[22] A day later, the Court granted that motion, and Mr. Baker's third privately appointed counsel under the Criminal Justice Act was subsequently appointed.[23]

On April 5, 2013, Mr. Baker filed a *pro se* memorandum in support of his motion to withdraw his plea of guilty, and his counsel also filed a memorandum in support of Mr. Baker's request.[24] A hearing on Mr. Baker's motion to withdraw plea of guilty was held on April 9, 2013, after which the District Court denied the motion from the bench.[25]

On May 15, 2013, the government filed a sentencing memorandum addressing each of the co-defendants in the case.[26] Mr. Baker's counsel also filed a sentencing memorandum under seal on his behalf.[27]

On May 21, 2013, following a hearing, the District Court orally sentenced Mr. Baker to imprisonment for a total term of 480 months, based on 420 months as to Count One; 120 months as to Count Two to run concurrently with Count One; and 60 months as to Count Four to run consecutively to Counts One and Two.[28]

---

[22] JA 015.
[23] *Id.*
[24] JA 016; 818; 826-833; 739-793.
[25] JA 011; 874.
[26] JA 016; 893-899.
[27] JA (Sealed Portion) 1016-1041.
[28] JA 017; 927-929.

Pursuant to the plea agreement, Count Three was dismissed.[29] Judgment on these terms was entered the following day.[30]

On May 21, 2013, Mr. Baker noted an appeal.[31]

### B.    Gary Cromartie

On June 27, 2012, the government filed its Second Superseding indictment, charging Mr. Cromartie with three offenses: Conspiracy to participate in a racketeering enterprise, pursuant to 18 U.S.C. § 1962 (d) (Count 1); Conspiracy to commit murder in aid of racketeering, pursuant to 18 U.S.C. § 1959(a)(5) (Count 2); and Conspiracy to distribute and possess with intent to distribute a mixture containing heroin, a schedule I controlled substance and cocaine base, a schedule II controlled substance, pursuant to 21 U.S.C. § 846 (Count 3).[32]

After a number of pretrial motions were filed, a re-arraignment was scheduled for November 1, 2012, at which time Mr. Cromartie pled guilty to counts 1, 2, and 3 of the second superseding indictment.[33]  On May 23, 2013, Mr. Cromartie was sentenced to:  324 months as to count one, 120 months as to count two, concurrent with count one, and 324 months as to count three, concurrent.[34]

---

[29] JA 017; 932.
[30] JA 017.
[31] JA 017; 950.
[32] JA 059.
[33] JA 027.
[34] JA 1003.

Mr. Cromartie filed a timely notice of appeal on May 24, 2013.[35]

## STATEMENT OF FACTS

**A.    Donte Baker**

### 1.    Offense Conduct and Investigation

This case arises from a police investigation of a drug conspiracy that allegedly operated between 2008 and 2012 and involved Appellants Gary Cromartie, Donte Baker, and others, selling and distributing heroin and cocaine. [36] The area targeted for the drug investigation centered on an adult entertainment district in Baltimore, Maryland known as "the Block."[37]  Mr. Baker and his mother, Monica McCants, another co-defendant, maintained the organization's drug supply and used other individuals, including Gary Cromartie and Tyrone Johniken, to sell drugs to other sellers and street customers. Cherrie Gammon was a seller and user of drugs sold by the organization. [38]

During the course of the investigation, narcotics and contraband were seized by the police from various individuals in the organization. Ms. Gammon was suspected by some of the co-conspirators of providing information that may have

---

[35] JA 1009.
[36] JA 768-769.
[37] *Id.*
[38] *Id.*

led to those seizures, and she was also suspected of stealing drugs from the organization by consuming drugs that were intended for sale to street customers.[39]

On December 12, 2010, Cromartie, Baker, and Johniken picked up Gammon from her home. Later that same day, she was found dead in a remote park in the City of Baltimore. A subsequent autopsy confirmed that her death was caused by multiple gunshot wounds.[40]

On December 27, 2010, police, armed with a warrant to recover Mr. Baker's DNA by oral swab, located him near his home and seized a weapon from him. He was arrested and charged with possession of a firearm.[41]

### 2.    Charges and Initial Proceedings

After the filing of state charges against Mr. Baker—initially for firearm and drug violations and later for homicide—a federal criminal investigation ensued that ultimately resulted in a Second Superseding Indictment charging Mr. Baker with the following offenses: Conspiracy to Participate in a Racketeering Enterprise in violation of 18 U.S.C. § 1962 (d) (Count One); Conspiracy to Commit Murder in Aid of Racketeering in violation of 18 U.S.C. § 1959 (a)(5) (Count 2); Conspiracy to Distribute and Possession with Intent to Distribute Controlled Dangerous Substances in violation of 18 U.S.C. § 846 (Count Three); and Possession of a

---

[39] *Id.*
[40] JA 086.
[41] JA 034-036.

Firearm in Furtherance of a drug trafficking Offense in violation of 18 U.S.C.
§ 924(c)(2).[42]

Counsel was appointed for Mr. Baker under the Criminal Justice Act.[43]
Several motions were filed on Mr. Baker's behalf by his initial and second
appointed counsel including a Motion to Suppress Statements and a Motion to
Suppress Search and Seizure Evidence.[44]  Hearings were held on September 27,
2012, September 28, 2012, October 31, 2012, and November 1, 2012 concerning
the Motions submitted by Mr. Baker and the other defendants.[45]

### 3.    The Guilty Plea Hearing

On November 5, 2012, Mr. Baker entered pleas of guilty to Counts One,
Two and Four in the Second Superseding Indictment pursuant to an oral "unwritten
but nevertheless binding plea agreement between the two sides…."[46] The plea
agreement was described by Mr. Baker's counsel:

> …the government at the time of sentencing will
> recommend a sentence of 32 years, which if my math is
> correct is 384 months. The defendant will be free to ask
> for whatever sentence he deems is appropriate. Count
> Three of the indictment will be dismissed at the time of
> sentencing. And the parties jointly agree that they will

---

[42] JA 037-039; 047-070.
[43] JA 005. The Office of the Federal Public Defender represented Baker at his
detention hearing. His first appointed counsel later withdrew on April 17, 2012. JA
008. His second counsel was appointed April 24, 2012. JA 009.
[44] *See* JA 040-047; 071-089.
[45] *See* JA 090-371; 372-537; 538-579; 580-694.
[46] JA 746:19-22.

> not be seeking an enhancement for the defendant being
> an organizer, leader, manager or supervisor….[47]

Additionally, Mr. Baker's counsel added:

> …normally when you sign a plea you waive all appeal
> rights other than if the sentence is above a certain
> number. Because there is no assigned plea he retains all
> of his appeal rights.
> THE COURT:  Absolutely. You retain your appellate
> rights Mr. Baker, unless you give them away.[48]

An additional part of the plea agreement was that the defense would seek and the government would not oppose application of a two level reduction of the offense level for acceptance of responsibility that resulted in the guilty plea.[49]

Pursuant to Rule 11 of the Federal Rules of Criminal Procedure, the District Court conducted an inquiry at the November 5, 2012 hearing.  The District Court advised Mr. Baker that he was under oath and determined that his level of educational training was tenth grade.[50]  The District Court elicited information from Mr. Baker that he had not been recently treated for mental disease or addiction and at the time of hearing was not under the influence of any drug, medicine, or alcohol.[51]  Baker's counsel deemed him competent to proceed.[52]

---

[47] JA 747:1-8.
[48] JA 748:15-20.
[49] JA 752:5-10.
[50] JA 745.
[51] JA 745.
[52] JA 745-746.

The District Court obtained an acknowledgement from Mr. Baker concerning his understanding of the terms of the oral plea agreement and ascertained whether Mr. Baker may have been coerced to enter a guilty plea by any threats, force or violence.[53]  The District Court also advised Mr. Baker that the court was not a party to the plea agreement and that "the terms of the plea agreement contain a recommendation to the Court as to sentence, and that I can reject that recommendation without permitting you to withdraw your pleas of guilty." [54] The District Court further advised that it could impose a sentence more severe than "you may be expecting."[55]

The District Court outlined the offenses to which Mr. Baker entered his guilty plea and the applicable maximum penalties for those offenses were stated on the record by counsel for the government.[56] The District Court explained to Mr. Baker the applicable mandatory minimum, the applicable supervisory release term, and possible fines, restitution, and forfeiture.[57]

As part of the possible consequences of Mr. Baker's guilty plea, the District Court sought and obtained acknowledgement by Mr. Baker that he had reviewed

---

[53] JA 750-751.
[54] JA 751.
[55] *Id.*
[56] JA 754.
[57] JA 755-756.

with his counsel the applicable U.S. Sentencing Guidelines.[58] The preliminary
assessment presented to the District Court reflected an offense level 43 reduced by
two levels for acceptance of responsibility resulting in offense level 41 with a
Criminal History Category of VI yielding 360 months to life.  After adding the
consecutive mandatory minimum 60 months resulting from the conviction under
18 U.S.C. § 924(c), the likely applicable guideline was 420 months to life.[59] The
District Court explained that the final determination of applicable guidelines would
not occur until information was provided by the probation department and that the
Court could consider other additional factors.[60]

The District Court inquired whether Mr. Baker understood that certain rights
would be waived through his entry of a guilty plea.[61] The Court permitted
government counsel to outline the elements constituting each of the offenses to
which Mr. Baker was entering his guilty pleas.[62] Thereafter, the government stated
the factual basis for each of the offenses to which Mr. Baker was pleading guilty.[63]
Mr. Baker entered pleas of guilty to Counts One, Two, and Four of the Second

---

[58] JA 757-760.

[59] JA 758.

[60] JA 760.

[61] JA 761-764.

[62] JA 765-767.

[63] JA 768-770. In Mr. Baker's case, the government said all three defendants killed
Ms. Gammon. At the re-arraignment of Mr. Cromartie, the government stated that
"Mr. Johniken was the shooter" although there was a claim that Baker was a
shooter.  (JA 720).  In its sentencing memorandum, the government stated that
Johniken may have been the "sole" individual who shot Gammon. (JA 895).

Superseding Indictment, and the District Court found Mr. Baker to be fully competent and capable of entering an informed plea and aware of the charges and consequences, accepted the pleas, and adjudged him guilty of the three offenses.[64]

### 4.    The Motion to Withdraw Guilty Plea

On January 25, 2013, Mr. Baker submitted a letter to the District Court requesting withdrawal of his guilty pleas to Counts Two and Four of the Superseding Indictment.[65] His request stated that his pleas of guilty to the two Counts were involuntary and based on his misunderstanding of the true nature of the offenses and the result of erroneous legal advice by his counsel concerning the interrelationship of his pleas of guilty to Counts One, Two, and Four.[66]

On February 20, 2013, a proceeding was held concerning the status of the relationship between Mr. Baker and his then appointed counsel.[67]  Further proceedings were postponed.[68]

On or about February 21, 2013, Mr. Baker submitted a memorandum asserting grounds in support of his request to withdraw his guilty plea similar to

---

[64] JA 773.
[65] JA 794-795.
[66] JA 794.
[67] JA 807.
[68] JA 807.

those he had raised initially and expanding his arguments to include the lack of a written agreement and inadequate advice of defense counsel. [69]

Mr. Baker was assigned new counsel, his third, on February 28, 2013.[70]

Mr. Baker's new counsel submitted a Memorandum in Response to the Government's Memorandum in Opposition to the Defendant's *pro se* Motion to Withdraw Guilty plea, asserting that Mr. Baker's meager education and lack of specific understanding with regard to the effect of a guilty plea to Count One caused his plea to be involuntary.[71]

On April 9, 2013, the District Court conducted a hearing concerning Mr. Baker's *pro se* Motion to Withdraw Guilty Plea. Baker's new counsel argued that given Mr. Baker's 10th grade education and the enormous amount of discovery evidence, Mr. Baker was unable to discern the implications of his guilty pleas. Specifically, he was unable to assess the net effect of the oral plea agreement and his guilty pleas on his likely assertion at sentencing of his role in the offenses in mitigation of his conduct.[72] Thus, Counsel contended, Baker did not appreciate that with his admission to and plea to Count One, he would be unable to

---

[69] JA 816.
[70] JA 015.
[71] JA 826-838.
[72] JA 843-846.

circumscribe his scope of conduct and responsibility with regard to Counts Two and Four.[73]

Mr. Baker's new counsel further asserted that the failure of communication between Mr. Baker's former counsel and Mr. Baker concerning the "package" nature of the guilty plea agreement and Mr. Baker's lack of understanding could be clarified by taking sworn testimony from Mr. Baker's former counsel.[74] The District Court ultimately held that any supplemental evidence from Mr. Baker's former counsel was unnecessary.[75] After considering the arguments of counsel, the record of the Court's colloquy during the guilty plea, and Mr. Baker's responses during the guilty plea proceeding, the District Court concluded that Mr. Baker failed to meet the burden of demonstrating a fair and just reason to justify withdrawal of his guilty pleas.[76] The District Court further concluded that the colloquy conducted by the Court under Rule 11 of the Federal Rules of Criminal Procedure was sufficient and denied Mr. Baker's Motion to Withdraw Guilty Pleas.[77]

---

[73] JA 849-852.
[74] JA 840-841.
[75] JA 868.
[76] JA 869.
[77] JA 870-874.

## 5.    The Sentencing Proceeding

On May 21, 2013, Mr. Baker appeared before the District Court for sentencing. After confirming that the parties had reviewed the presentence report, the District Court found that the applicable sentencing guidelines offense level was 43 with a reduction of two levels associated with the admission of guilt resulting in a final offense level of 41.[78]  The District Court found that the criminal history for Mr. Baker was Criminal History Category III and denied a defense request to reduce the criminal history category. Since Count Four of the Superseding Indictment carried a mandatory minimum penalty of 60 months consecutive to any other sentence, the resulting guideline range was 420 months to life.[79]  Ms. Gammon's sister provided victim/survivor impact testimony.[80]

Counsel for the government stated its reasons "justifying" imposition of its sentencing recommendation of 32 years (384 months), citing the severity of the offense, the motives of the Defendants, the history of the relationship between Mr. Baker and the victim, and Mr. Baker's criminal record.[81] The defense submitted a sentencing memorandum and presented argument supporting imposition of the government's recommendation of 32 years.[82] Identifying the government's 32-year

---

[78] JA 906.
[79] *Id.*
[80] JA 911-912.
[81] JA 913-915.
[82] JA (Sealed Portion) 1016-1041.

recommendation as effectively another guideline, defense counsel reviewed at the

hearing several factors including the government's sentencing recommendation

and various factors under 18 U.S.C. § 3553 (a).[83]  Defense counsel specially noted

Mr. Baker's age, his brief employment history, his lack of an extensive criminal

record, and the significance of the impact of a sentence of 384 months on Mr.

Baker and the public.[84]

The District Court considered the various factors under 18 U.S.C. § 3553 (a)

and for nearly every factor concluded that a severe sentence should be imposed.

After considering the applicable sentencing guidelines as a type of outer boundary

for a sentence, the District Court assessed the government's specific sentencing

recommendation of 32 years and concluded that it was "too light, too lenient, too

short." [85] The Court "acknowledged" that the government's sentencing

recommendation was "probably a factor" in Mr. Baker's decision to enter his

guilty pleas.[86] The District Court imposed a sentence of 420 months or 35 years

with regard to Count One; 120 months or 10 years with regard to Count Two to run

concurrent to Count One; and 60 months with regard to Count Four to be served

---

[83] JA 915-917.
[84] JA 918; JA (Sealed Portion) 1016-1026.
[85] JA 926; 927.
[86] JA 927.

consecutively to those sentences imposed with regard to Counts One and Two for a total sentence of 480 months or 40 years imprisonment.[87]

On May 21, 2013, Mr. Baker filed a Notice of Appeal.[88]

### B.    Gary Cromartie

#### 1.    The Guilty Plea Hearing

On November 1, 2012, Mr. Cromartie appeared with counsel before Judge James K. Bredar for the purpose of conducting a re-arraignment and hearing on Mr. Cromartie's plea of guilty to the first three counts of the second superseding indictment, including Conspiracy to Participate in a Racketeering Enterprise, Conspiracy to Commit Murder in Aid of Racketeering, and Conspiracy to Distribute and Possession with Intent to Distribute Heroin and Cocaine.[89]  In connection with Mr. Cromartie's plea, the government read a statement of facts detailing the facts pertaining to the drug distribution enterprise, Mr. Cromartie's association with the drug distribution enterprise, the motivation behind the defendants' desire to murder Cherrie Gammon, and the steps Mr. Cromartie took as a co-conspirator to murder Ms. Gammon.[90] A summary of the Statement of Facts, as adopted by Mr. Cromartie, follows.

---

[87] JA 928.
[88] JA 950.
[89] JA 027.
[90] JA 718-20.

Sometime between 2008 and January 2012, Mr. Cromartie was a minor participant in a criminal drug distribution enterprise led by Dante Baker and Monica McCants (Baker's mother). The purpose of the enterprise was to distribute heroin and cocaine base to drug users on Baltimore Street in Baltimore, Maryland, in an area known as "the Block." Baker and McCants obtained supplies of drugs and distributed those drugs to both lower level members of the organization in packs of 10, 20, or 60 pills or vials and sold them to drug users. Mr. Cromartie and Tyrone Johniken sold the heroin and cocaine base from the packs both to runners, who provided the drugs to users, and directly to drug users. Cherrie Gammon also sold narcotics for the enterprise. Mr. Cromartie admitted that the total amount of cocaine base and heroin distributed by the conspiracy, and foreseeable to him, exceeded 280 grams and one kilogram, respectively.

On multiple occasions, narcotics and contraband were seized by law enforcement from one or more defendants. The defendants came to believe Ms. Gammon was relaying information about the enterprise to the police and that she had stolen drugs from the organization. On the afternoon of December 12, 2010, Donte Baker drove Mr. Cromartie to Ms. Gammon's residence, went to her front door, and accompanied her to the car. First, they drove to the Block on Baltimore Street, then, Mr. Cromartie, Mr. Baker, and Mr. Johniken drove Ms. Gammon to

20

the area of Leakin/Gwynn Falls Park and shot her multiple times. The shooter was

Johniken.[91] The defendants then informed Ms. McCants about the murder.

Mr. Cromartie admitted to the trial court that the government could prove

the Statement of Facts as read by the government and as reviewed by him and his

counsel.[92]

### 2.    The Sentencing Proceeding

On May 23, 2013, the trial court heard from the government, Mr.

Cromartie's defense counsel, and Mr. Cromartie himself at his sentencing

hearing.[93] Regarding Mr. Cromartie's role in the murder conspiracy, the following

discussion ensued between counsel and the trial court:

> [Defendant's counsel]: *I don't know to this day—and I
> don't know whether he does—whether he ever knew that
> Ms. Gammon was going to be killed that night.* I think,
> you know, in talking with—
> THE COURT: Hasn't he essentially admitted to that,
> though?
> [Defendant's counsel]: He has admitted to it.
> THE COURT: Agreed to the statement of facts?
> [Defendant's counsel]: *At some point, that plan became
> clear. Whether it was clear at the moment he goes up to
> the door and knocked on the door, that's what I mean. It
> was the timing of it. Sometimes you know about it
> sometime before it actually happens, but it may not have
> been as crystal clear at that moment.* Gary's not capable
> of formulating the overall plan, and I think the

---

[91] Although the government alleged there was evidence that Mr. Baker claimed to
be the shooter.
[92] JA 720.
[93] JA 957.

> Government would concede that. He is a follower. He is
> a subordinate, and unfortunately his small action in this
> matter led to horrible consequences.
> As I noted before –[94]

The court interrupted Mr. Cromartie's counsel and directed him to portions of the

agreed statement of facts; specifically, the court quoted from the presentence report

that, "Narcotics and other contraband were seized from one or more of the

Defendants, 'that includes Mr. Cromartie,' or McCants on multiple occasions. The

Defendants, 'that includes Cromartie,'—believed that someone was relaying

information about the McCants-Baker organization to the police, and they

suspected Cherrie Gammon in particular of doing this. The Defendants—'and, to

me, that includes Mr. Cromartie, because he's not written out of this,' The

Defendants also believed that Gammon had stolen drugs from the organization;

specifically, that she took drugs to resell and never sold them, so she was unable to

return money from the sales to Baker.'" [95]

The court further quoted the presentence report, saying "Then we go to

Paragraph 9. 'Between approximately 3:00 and 3:30 a.m. on December 12th, Gary

Cromartie left the vehicle parked in front of Gammon's residence, picked her up at

the front door, and accompanied her to the car, which was driven by Baker. The

vehicle briefly returned, and Gammon reentered the house, but Gammon soon

---

[94] JA 970-971.
[95] JA 971.

22

thereafter left the house and got back into the vehicle. After going first to the area of The Block on Baltimore Street, Cromartie, Baker, and Johniken drove Gammon to the area of Leakin/Gwynns Falls Park, and killed her with multiple gunshot wounds.'"[96]

The court acknowledged that, based on this evidence, "there is room" for counsel's advocacy "but just barely."[97]  The court accepted the statement of facts "because what I heard you to say with some precision is that you're not sure as he stood on the front stoop that he knew the plan was to murder her, but he's agreed in the statement of facts to a knowledge, an understanding, and a joining in on a perspective that she might be informing on them and that she is stealing from them; in other words, the motive for the harm that ultimately befell her." (*Id.*).

Later, the trial court inquired of Mr. Cromartie regarding the evidence of his involvement in the murder conspiracy:

> THE COURT: Mr. Cromartie, as this case has progressed, I've realized you're in a little different situation from some of the others who were involved, and the Government hasn't presented evidence that you were one of the ones actually shooting that night, but I still struggle trying to understand your conduct in going to the door that night, given your prior relationship with Ms. Gammon, and drawing her out of the house that night, and maybe I'm asking a question that is impossible for you to answer, but I wouldn't be fair if I didn't tell you that that's the question in my mind. I can't understand it.

---

[96] *Id.*

[97] JA 972.

[Mr. Cromartie]: Do I answer?

[Defendant's counsel]: You don't have to.

[Mr. Cromartie]: Can I talk to my lawyer first?

THE COURT: You can.

(Counsel conferring with the Defendant.)

[Mr. Cromartie]: Well, Your Honor, the answer to your question is: *Honestly, I didn't have the full intentions of what the—Baker, Johniken, or McCants had originally had planned.* Like—

[Defendant's counsel]: Can I do a little guidance here?

THE COURT: Yes, Mr. [Defendant's counsel].

[Defendant's counsel]: Gary, you're not denying you went up to the door and lured her out? You're not denying that?

[Mr. Cromartie]: No.

[Defendant's counsel]: Okay. *And, at that moment, did you fully understand what Baker and Johniken had in mind?*

[Mr. Cromartie]: *No, not at all.*

[Defendant's counsel]: Okay. Did you come to realize that at some time later on that evening?

[Mr. Cromartie]: Yes.

THE COURT: Well, that about fits with my sense of what happened here, so I appreciate your candor, because *I have suspected that you were not necessarily fully on board with the plan to murder Ms. Gammon when you induced her to come out of that house. I think you believed that harm was going to come to her, but maybe not a homicide*, but, from the facts as they've emerged in this case, it's also my view that, over the course of the evening, as you've just admitted—and I give you credit for that—it did become clear to you what was going to occur.[98]

---

[98] JA 979-980.

Thereafter, the court sentenced Mr. Cromartie to: 324 months as to count one, 120 months as to count two, concurrent with count one, and 324 months as to count three, concurrent.[99]

Mr. Cromartie filed a timely notice of appeal on May 24, 2013.[100]

## **SUMMARY OF THE ARGUMENT AS TO DONTE BAKER**

Mr. Baker's case presents at least two instances in which the District Court abused its discretion. First, the District Court erroneously denied Mr. Baker's motion to withdraw his guilty plea. Second, the sentence the Court imposed on Mr. Baker was substantively unreasonable.

The District Court failed to give proper weight to the fair and just reasons Mr. Baker offered in support of his motion to withdraw his guilty pleas pursuant to this Court's holding in *United States v. Moore*, 931 F.2d 245 (4th Cir. 1991). Given Mr. Baker's age, education, and lack of experience with federal court, and considering the limited and inadequate explanations of the complex unwritten plea agreement offered to Mr. Baker by his then-counsel and the District Court, Mr. Baker's guilty pleas were not knowing and voluntary. In addition, Mr. Baker's guilty pleas were made without the close assistance of counsel because his communications with his then-counsel were inadequate for him to sufficiently understand the implications of his pleas, and, but for this inadequate

---

[99] JA 1003.
[100] JA 1009.

communication, there is a reasonable probability he would have elected to proceed to trial. Furthermore, there was a material factual dispute regarding the nature and extent of Mr. Baker's communications with counsel, and the District Court erred in ruling on this issue without holding an evidentiary hearing or admitting any evidence. Finally, the delay between Mr. Baker's guilty plea and his motion was two-plus months, less than the amount of time this Court has recognized to be "not too long" for purposes of withdrawing a guilty plea under *Moore*. For these reasons, the District Court abused its discretion in denying Mr. Baker's motion to withdraw his guilty pleas. This Court should reverse the District Court's denial and remand this matter for trial.

In the alternative, if this Court does not remand for trial, it should vacate Mr. Baker's 480-month sentence as substantively unreasonable. While Mr. Baker does not allege that the District Court incorrectly calculated the advisory Sentencing Guidelines range or otherwise committed any procedural errors in arriving at its sentence, that sentence violated 18 U.S.C. § 3553 (a)'s directive to District Courts to issue sentences that "are not greater than necessary" to comply with the goals of that statute. In the present case, the District Court's 480-month sentence failed to give sufficient weight to Mr. Baker's individual history and characteristics and was unnecessarily far harsher than the government's recommended punishment. Therefore, because the District Court failed to sufficiently assess the "totality of

the circumstances," and because this Court is not required to presume that the sentence is reasonable, this Court should find that the sentence was substantively unreasonable. The Court should vacate the sentence and remand to the District Court for re-sentencing.

## STANDARD OF REVIEW AS TO DONTE BAKER

A District Court's denial of a motion to withdraw a guilty plea is reviewed on appeal for abuse of discretion. *See United States v. Ubakanma*, 215 F.3d 421, 424 (4th Cir. 2000) (citations omitted).

An appellate court's review of the reasonableness of a sentence is likewise for abuse of discretion. *See United States v. Pauley*, 511 F.3d 468, 473 (4th Cir. 2007); *Gall v. United States*, 552 U.S. 38, 51 (2007).

## ARGUMENT OF DONTE BAKER

### I.     The District Court's Denial of Mr. Baker's Motion to Withdraw His Guilty Plea Was an Abuse of Discretion.

Mr. Baker's guilty plea was not knowing or voluntary and was entered without close assistance of counsel. There was no excessive delay between Mr. Baker's guilty plea and his *pro se* motion to withdraw his guilty plea. Accordingly, the District Court's denial of Mr. Baker's motion to withdraw that plea was an abuse of its discretion.

This Court "review[s] the denial of a motion to withdraw a guilty plea for abuse of discretion." *United States v. Ubakanma*, 215 F.3d 421, 424 (4th Cir.

27

2000) (citations omitted).  While a defendant bears the burden of showing a "fair and just reason" for withdrawal of the plea, *see United States v. Puckett*, 61 F.3d 1092, 1099 (4th Cir. 1995); Fed. R. Crim. P. 11 (d)(2)(B), "[w]ithdrawal of a guilty plea prior to sentencing should normally be allowed." *United States v. Brown*, 617 F.2d 54, 55 (4th Cir. 1980).[101]

Courts in the Fourth Circuit weigh a list of six factors in determining whether a defendant has met his burden to show a fair and just reason for withdrawing his guilty plea:

> (1) whether the defendant has offered credible evidence that his plea was not knowing or not voluntary, (2) whether the defendant has credibly asserted his legal innocence, (3) whether there has been a delay between the entering of the plea and the filing of the motion, (4) whether defendant has had close assistance of competent counsel, (5) whether withdrawal will cause prejudice to the government, and (6) whether it will inconvenience the court and waste judicial resources.

*United States v. Moore*, 931 F.2d 245, 248 (4th Cir. 1991), cert. denied, 502 U.S. 857 (1991).

In the present case, the first and fourth factors, whether the defendant's guilty plea was knowing and voluntary and whether the defendant was afforded close assistance of competent counsel, weigh heavily in Mr. Baker's favor. The third factor, whether there was a delay between the entering of the plea and the filing of the motion to withdraw, does not weigh against Mr. Baker. *See Moore*,

---

[101] Note that the *Brown* Court was analyzing the issue under a slightly different standard, the former version of Fed. R. Crim. P. 32(d).

28

931 F.2d at 248. For the reasons set forth below, the District Court abused its

discretion by denying Mr. Baker's motion to withdraw his guilty plea.

### A. Mr. Baker's Guilty Pleas Were Not Knowing or Voluntary.

As mentioned, this Court weighs six factors in examining a defendant's

motion to withdraw a guilty plea. *See Moore*, 931 F.2d at 248. These six factors are

not to be given equal weight, however; the first factor, whether the plea was

knowing and voluntary, is the most important consideration. *See, e.g., United*

*States v. Wilson*, 81 F.3d 1300, 1307 (4th Cir. 1996) (noting that, of the six *Moore*

factors, "the fairness of the Rule 11 proceeding is the key factor in the review of

the denial of a motion to withdraw a guilty plea") (citing *Puckett*, 61 F.3d at 1099).

Indeed, the central importance of the knowing and voluntary nature of the plea was

acknowledged by the District Court during the April 9, 2013 hearing on Mr.

Baker's plea withdrawal motion:

> [I]f the Court was persuaded, if there was credible evidence that the
> defendant's plea truly was not knowing or was not voluntary, then that
> would trump the other issues in the court's mind, because that would be such
> an unacceptable defect that it would, in this Court's mind, compel a granting
> of the motion and separate trial for Mr. Baker.[102]

The Fourth Circuit has opined that "[s]tatements of fact by a defendant in

Rule 11 proceedings may not ordinarily be repudiated, and, similarly, findings by a

sentencing court in accepting a plea constitute a formidable barrier to attacking the

---

[102] JA 874:4-9.

plea." *United States v. Lambey*, 974 F.2d 1389, 1395 (4th Cir. 1992) (*en banc*) (citation and quotation marks omitted). However, the *Lambey* Court noted that "[w]e do not rule out the possibility that a defendant's misapprehension of a likely sentence, based on a clear error in the advice given him, can be a fair and just reason for withdrawal of a guilty plea if it is not corrected by the court at the Rule 11 hearing." *Id.*

During the April 9, 2013 withdrawal motion hearing, the District Court's formal findings on the knowing and voluntary nature of Mr. Baker's plea relied heavily on the transcript from the November 5, 2012 re-arraignment:

> The first factor is whether the defendant has offered credible evidence that his plea was not knowing or not voluntary. Certainly there's been a contention made, since the guilty plea, that the defendant misunderstood, that he didn't understand the full implications of what was occurring, he didn't understand how the two—the three offenses related to each other. But I do not conclude that this is credible evidence that his plea was not knowing or not voluntary, because the record, in the form of a transcript of the Rule 11 proceeding is in stark contrast to that contention. It's detailed. It's elaborate. And it reveals that the defendant knew exactly what he was doing when he offered the three guilty pleas, and that he offered them after reflection and with the assistance of his lawyer.[103]

However, a close examination of Mr. Baker's November 5, 2012 re-arraignment hearing reveals some significant gaps. At the outset of the hearing, the District Court went through an explanation of counts 1, 2, and 4 of the superseding

---

[103] JA 871:2-16.

indictment, the counts to which Mr. Baker was pleading guilty.[104] In response to

questioning from the District Court, Mr. Baker admitted that he had discussed the

case and the plea agreement with his previous counsel—his second counsel—and

was satisfied with the quality of that counsel's representation.[105] The District

Court told Mr. Baker that the Court was not a party to the plea agreement and

therefore it was free to reject the plea agreement's recommended sentence.[106] The

District Court and counsel engaged in an extended discussion of the application of

the Federal Sentencing Guidelines, ultimately concluding that the advisory

Guidelines range would be 420 months to life.[107] In response to questions posed by

the District Court, Mr. Baker said he understood that, in addition to the Sentencing

Guidelines and any departures thereunder, the Court would consider the list of

factors enumerated in 18 U.S.C. § 3553 (a) and impose a sentence that might be

greater or lesser than the Guidelines recommendation.[108] Finally, Mr. Baker said he

understood that the sentence ultimately imposed might be different than any

estimate provided by his attorney.[109]

---

[104] JA 742:12-744:20.
[105] JA 746:6-18. Mr. Baker subsequently recanted this statement in one of his *pro se* pleadings, *see* JA 814 ("[T]he Defendant was not satisfied with his representation nor did the Defendant fully understand the plea agreement").
[106] JA 751:2-12.
[107] JA 757:10-760:14.
[108] JA 760:15-22.
[109] JA 760:23-761:1.

The foregoing facts, however, address only a portion of the story. The District Court's reliance on the November 5, 2012 hearing transcript to find that Mr. Baker's guilty plea was knowing and voluntary[110] failed to take account of the fact that Mr. Baker was only 22 years old at the time of the hearing,[111] had just a tenth-grade education,[112] and had no prior experience with the federal court system.[113] Nor did the Court sufficiently weigh the fact that the complex plea agreement had never been reduced to writing but was instead conveyed to Mr. Baker orally[114] and was summarized, again orally, by defense counsel during the hearing.[115] Finally, and most importantly, this complex oral plea agreement was never adequately explained to Mr. Baker by defense counsel or the District Court, either before or during the November 5, 2012 re-arraignment, and was therefore never fully understood by him. This inadequate explanation was especially evident with respect to the interrelationship of the counts (i.e. that each count was a separate substantive crime, and that the guilty plea to count 2 would increase the offense level of count 1 from 12 to 43). Nor was Mr. Baker sufficiently made aware of the limiting effect that pleading guilty to count 2 would have on his advocacy with respect to count 1, i.e. that it would interfere with his ability to

---

[110] *See* JA 871:2-16.
[111] JA 742:5-6.
[112] JA 745:13-16.
[113] *See* JA 847:6-8.
[114] JA 746:19-22.
[115] JA 746:25-747:13.

simultaneously acknowledge responsibility for the count 1 racketeering enterprise while still accurately describing his culpability for the murder committed in furtherance of the conspiracy.[116]

Thus, Mr. Baker's November 5, 2012 guilty plea was not knowing or voluntary, as it was based on his misunderstanding of the true nature of the charged offenses and their interrelationship. This misapprehension by Mr. Baker, based on his misunderstanding of the advice given him by his counsel, was not sufficiently corrected by the Court during the re-arraignment hearing and is therefore a fair and just reason for withdrawal of Mr. Baker's guilty plea. *See Lambey*, 974 F.2d at 1395.

### B.    Mr. Baker Was Not Afforded the Close Assistance of Counsel.

The fourth of the six *Moore* factors, "whether defendant has had close assistance of competent counsel," also weighs in Mr. Baker's favor. *See* 931 F.2d at 248. Furthermore, the District Court erred by finding that it did not need to take direct evidence about a disputed issue of fact that was critical in this regard, namely Mr. Baker's ability to understand and effectively communicate with his counsel.

The Fourth Circuit holds that

[t]o justify a withdrawal of a guilty plea on the basis of ineffective assistance of counsel, a defendant must show 1) that his counsel's actions fell below an

---

[116] *See* JA 844:10-845:14.

33

objectively reasonable standard, and 2) that but for the attorney's errors, it is
reasonably probable that the defendant would have chosen to face trial rather
than plead guilty.

*United States v. Dyess*, 478 F.3d 224, 237 (4th Cir. 2007), cert. denied sub nom.

*Spencer v. United States*, 552 U.S. 1063 (2007) (citing *Ubakanma*, 215 F.3d at 425

and *United States v. DeFreitas*, 865 F.2d 80, 82 (4th Cir.1989)).

While there may be no dispute that Mr. Baker's counsel at the time of his

November 5, 2012 guilty pleas was then and is now a competent or even an

excellent attorney, his representation leading up to Mr. Baker's guilty plea "fell

below an objectively reasonable standard" because of his inability and failure to

communicate effectively with Mr. Baker. *See Dyess*, 478 F.3d at 237; *Ubakanma*,

215 F.3d at 425; *DeFreitas*, 865 F.2d at 82. Given Mr. Baker's age, education

level, and lack of experience with the federal court system,[117] and in light of the

more than 2,500 pages of discovery produced in this complex, multi-defendant

case, Mr. Baker felt that his communication with his counsel was inadequate for

him to sufficiently understand the case and the implications of his guilty plea.[118]

With respect to Mr. Baker's communication with counsel, the record indicates that

counsel met with Mr. Baker roughly six times between the spring of 2012 and

March of 2013.[119] The record also demonstrates that counsel was largely

---

[117] *See* JA 742:5-6; 745:13-16; 847:6-8.
[118] *See* JA 821.
[119] JA 853:22-24; 824-25.

unavailable to Mr. Baker in the early part of 2013 because of another trial commitment, a fact which the District Court noted approvingly.[120]

Thus, Mr. Baker's lack of education and the unavailability of his then counsel to address his concerns impeded their attorney-client communication. When viewed in context, defense counsel was unable to meet the required standard of objective reasonableness. Furthermore, "but for counsel's deficient communication, it is reasonably probable that [Mr. Baker] would have chosen to face trial rather than plead guilty," as evidenced by the fact that Mr. Baker filed a motion to withdraw his guilty plea and proceed to trial as soon as he fully understood the extent of the breakdown in his communications with counsel. *See Dyess*, 478 F.3d at 237.

Not only was Mr. Baker denied the close assistance of counsel while deciding to enter his guilty plea in November 2012, but the District Court erred during the April 9, 2013 hearing on the withdrawal motion by declining the undersigned's offer to submit additional evidence about the nature and extent of the attorney-client communications between Mr. Baker and counsel.[121]  Instead, the District Court explicitly held that it saw no need to take testimony from counsel or admit any additional evidence.[122]

---

[120] *See* JA 854:9-855:19.
[121] *See* JA 840:25-890:4.
[122] JA 917:15-841:11.

In finding that counsel provided Mr. Baker with the close assistance of

competent counsel, the District Court stated:

> Mr. Proctor's conduct during the plea proceeding itself reveals his expertise, and his knowledge of his client's case, and his reflection and consideration of the exposure that existed in the case. **And that gives the Court a basis for concluding that the advice and assistance that he was providing to Mr. Baker, within the privacy of their attorney-client relationship, was effective and was sound and that it was wise.**[123]

(Emphasis added). However, counsel's overall knowledge, competence, and

expertise as an attorney were not and are not in dispute. What was in dispute was

the precise nature and extent of communication between attorney and client. In one

of Mr. Baker's *pro se* submissions in support of his withdrawal motion, Mr. Baker

averred that the motion was based in part on "counsel's lack of communication

with the Defendant."[124] The Fourth Circuit has made clear, pre-*Strickland,* that the

effective assistance of counsel guaranteed by the Sixth Amendment is not satisfied

when counsel is competent and prepared to represent the Defendant in court

proceedings, it also demands that counsel sufficiently confer with the Defendant to

advise him of his rights. *See Marzullo v. Maryland*, 561 F.2d 540, 544 (4th Cir.

1977) (explaining the Sixth Amendment's objective standard for competence of

counsel and holding that counsel for an indigent defendant, *inter alia*, "must confer

with his client without undue delay and as often as necessary, **to advise him of his**

---

[123] JA 872:12-19.
[124] *See* JA 821.

**rights** and to elicit matters of defense or to ascertain that potential defenses are unavailable") (citing *Coles v. Peyton*, 389 F.2d 224, 226 (4th Cir. 1968) (emphasis added)).

The only specific finding the District Court made with respect to the nature and sufficiency of attorney-client communication between Mr. Baker and counsel was to note that counsel's communications with Mr. Baker were limited by other case commitments, a fact that, if anything, favors Mr. Baker.[125]  In any event, because there was a disputed and material issue of fact—i.e. the nature and extent of counsel's communications with Mr. Baker—the District Court should have conducted an evidentiary hearing or at least requested an affidavit from counsel on that issue, and its failure to do so was error.  *Cf. United States v. Dickerson*, ___ F. Appx. ___, 2013 WL 5996767 (4th Cir. Nov. 13, 2013) (holding that the trial court abused its discretion in failing to conduct an evidentiary hearing before ruling on defendant's 28 U.S.C. § 2255 ineffective assistance of counsel claim).

### C. There Was Not an Excessive Delay Between Mr. Baker's Plea and His Withdrawal Motion.

The third *Moore* factor is "whether there has been a delay between the entering of the plea and the filing of the motion."  931 F.2d at 248.  While this factor   carries less weight than the knowing and voluntary nature of the plea and

---

[125] *See* JA 854:9-855:19.

whether the plea was offered after the close assistance of competent counsel, it nevertheless points in Mr. Baker's favor as well.

The First Circuit has explained the significance of the delay between the plea and the withdrawal motion this way:

> Because the timing of a defendant's attempted plea withdrawal is highly probative of motive, close scrutiny of the chronology is important in adjudicating whether retraction is fair and just. While an immediate change of heart may well lend considerable force to a plea withdrawal request, a long interval between the plea and the request often weakens any claim that the plea was entered in confusion or under false pretenses. …Put another way, excessive delay saps strength from any proffered reason for withdrawal.

*United States v. Doyle*, 981 F.2d 591, 595 (1st Cir. 1992) (citations omitted).  The *Doyle* court went on to hold that the defendant's delay in bringing his withdrawal motion—which was nearly seven months, despite the fact that he had been made aware of the purported basis for the withdrawal two days after the plea— "smack[ed] of post-hoc rationalization" and weighed against granting the motion. *Id.* By contrast, the Fourth Circuit, in *United States v. Bowman*, agreed with the trial court's finding that a delay of three months between a guilty plea and a withdrawal motion "was not too long", although it ultimately went on to affirm the denial of the motion for other reasons.  348 F.3d 408, 415-16 (4th Cir. 2003).

Here, the re-arraignment at which Mr. Baker pled guilty to counts 1, 2, and 4 of the second superseding indictment took place on November 5, 2012.[126]  Mr. Baker's *pro se* withdrawal motion was dated January 25, 2013 and docketed with the District Court on January 29, 2013.[127]  Thus, the delay between the plea and the motion was two-plus months, less than the period of time this Court found to be "not too long" in *Bowman*.  *See* 348 F.3d at 415-16.  Nor is there anything in the record showing that Mr. Baker was aware of the grounds for his withdrawal motion long before he actually filed the motion or that the delay smacked of post-hoc rationalization. *Cf. Doyle*, 981 F.2d at 595. Thus, notwithstanding the District Court's inconclusive finding,[128] this factor weighs in Mr. Baker's favor.

For the foregoing reasons, Mr. Baker's Motion to Withdraw His Guilty Plea should have been granted, and the District Court's denial of that motion was an abuse of its discretion. *See Ubakanma*, 215 F.3d at 424. Accordingly, this Court should strike the judgment in this case, reverse the District court's denial of Mr. Baker's request to withdraw his guilty plea, and remand this matter to the District Court for trial.

---

[126] *See* JA 739.

[127] JA 794-95.

[128] *See* JA 872:8-9 (District Court noting that, while "[t]here was some delay, the significance of that is less clear to me").

**II.     The District Court's Sentence of Mr. Baker to 480 Months Was Substantively Unreasonable.**

The sentence of 480 months imposed by the District Court in this case, which was substantially greater than the government's sentencing recommendation and failed to take sufficient account of Mr. Baker's history and characteristics, was substantively unreasonable and an abuse of discretion. Therefore, it should be vacated.

The Fourth Circuit has explained that "[s]ince the Supreme Court decided *United States v. Booker*, 543 U.S. 220 (2005), the sentencing guidelines have been advisory, and our review of criminal sentences is limited to determining whether they are reasonable." *United States v. Morace*, 594 F.3d 340, 345 (4th Cir. 2010) (punctuation and citation omitted). "Our appellate review of the reasonableness of a sentence focuses on whether the sentencing court abused its discretion in imposing the chosen sentence." *United States v. Pauley*, 511 F.3d 468, 473 (4th Cir. 2007); *see also Gall v. United States*, 552 U.S. 38, 51 (2007) ("Regardless of whether the sentence imposed is inside or outside the Guidelines range, the appellate court must review the sentence under an abuse-of-discretion standard").

"This abuse of discretion standard of review involves two steps, the first examines the sentence for significant procedural errors, the second looks at the substance of the sentence." *Pauley*, 511 F.3d at 473. When reviewing the substantive reasonableness of a sentence, this Court "tak[es] into account the

40

totality of the circumstances, including the extent of any variance from the

Guidelines range. If the sentence is within the Guidelines range, we, as an

appellate court, may, **but are not required to,** presume that the sentence is

reasonable." *Id.* (citing *Gall*, 552 U.S. at 51) (punctuation omitted, emphasis

added).

Here, Mr. Baker does not allege procedural unreasonableness in the

imposition of the District Court's sentence. *See Pauley*, 511 F.3d at 473. There was

no material dispute about the proper application of the advisory Sentencing

Guidelines, as the parties agreed that the offense level was 41 (43 with a 2-point

downward adjustment for acceptance of responsibility)[129] and their disagreements

about Mr. Baker's criminal history category were not ultimately material.[130] Thus,

Mr. Baker does not challenge the Court's finding that the advisory Sentencing

Guidelines range in this case was 360 months to life for counts 1 and 2, and an

additional 60 month mandatory minimum consecutive sentence for count 4,

effectively making the advisory guidelines range 420 months to life.[131]

---

[129] *See* JA 903:20-904:14.

[130] *See* JA 906:3-907:2 (District Court noting that, even if he accepted Mr. Baker's arguments about his criminal history category, at a minimum Mr. Baker would be in Category II, and the guideline recommendation would still be 360 months to life, but stating that Court's actual finding was that Mr. Baker was in category III, and finally pointing out that Mr. Baker's arguments about criminal history could be applied to the proper application of the 18 U.S.C. § 3553 (a) factors).

[131] *See* JA 925:14-23.

However, Mr. Baker does challenge the substantive reasonableness of his 480-month sentence, because the District Court did not properly "take into account the totality of the circumstances," and this Court is "**not required to** presume that the [within-guidelines] sentence is reasonable. "*See Pauley*, 511 F.3d at 473; *Gall*, 552 U.S. at 51. When analyzing the statutory sentencing factors enumerated in 18 U.S.C. § 3553, with respect to the "history and characteristics of the defendant," *see id.* § 3553(a)(1), the District Court found that Mr. Baker has a criminal history, that he is a young man of 23 , that his father was absent from his life growing up, and that his mother is a co-defendant.[132]  However, in making this cursory finding, the District Court failed to adequately take into account the "totality of the circumstances" of Mr. Baker's history and characteristics. Specifically, the District Court failed to sufficiently consider that Mr. Baker has been forced to be his own role model for much of his life due to the lack of parental support and supervision and especially due to the absence of his father,[133] and—more importantly—that there is ample evidence in the record that Mr. Baker is redeemable and has potential to contribute to society (e.g., letters from his former teachers,[134] the fact that he completed a nine-week program called "Reverse the Trend,"[135] and the fact

---

[132] JA 900:12-22.

[133] *See, e.g.,* JA (Sealed Portion) 1038, 1039, 1040.

[134] JA 1027-1031.

[135] *See* JA 1033.

that he pursued and completed his GED while awaiting trial in this matter[136]).

While these factors do not excuse Mr. Baker's actions, their consideration is

crucial to put the conduct into proper context and to show Mr. Baker's potential to

repay his debt to society in the future if given the opportunity.

    More fundamentally, the District Court's sentence of 480 months was

substantively unreasonable because it was—unnecessarily—far harsher than the

government's recommended sentence. In both its sentencing memorandum and at

the May 21, 2013 sentencing hearing, the government fulfilled its obligation under

the oral plea agreement and recommended a sentence for Mr. Baker of 384

months.[137] At the sentencing hearing, after discussing the application of the

sentencing guidelines, hearing arguments from the parties, and making its findings

with respect to the 18 U.S.C. § 3553 (a) sentencing factors, the District Court made

some additional observations before imposing its sentence. The Court noted that, in

its view, this was a "despicable" and "brutal" offense and therefore the starting

point for a sentence in its mind was life without parole.[138]  However, because Mr.

Baker pled guilty and accepted responsibility for the offense, the Court said that

that pulled the sentence off of a life term, but the question was how far.[139] Next,

the Court turned to the government's sentencing recommendation of 384 months,

---

[136] *See* JA 1025.

[137] *See* JA 997; JA 915.

[138] JA 926:2-11.

[139] JA 926:17-927:4.

finding that such a sentence would be "too light, too lenient, too short..." but noting that it was a recommendation the Government made during the plea bargaining process and that it no doubt influenced the advice that defense counsel provided to Mr. Baker and factored in the decision that Mr. Baker made not to go to trial.[140] The Court then reiterated that all parties understood this was "never a binding recommendation" but said that it was the Court's view that it should give "some deference" to the government's recommendation, and noted that the Court had been "influenced" by the recommendation and indeed had changed the sentence it would otherwise have imposed as a result.[141] The Court then stated that its sentence for Mr. Baker was 480 months, broken down by count.[142]

Mr. Baker concedes that the government's recommendation of 384 months was not binding on the District Court. However, in sentencing Mr. Baker to a term of imprisonment some 96 months longer than the government's recommendation, the District Court ran afoul of 18 U.S.C. 3553(a)'s mandate to impose sentences that "are not greater than necessary" to comply with the goals of that statute. Even though the District Court's sentence was within the advisory guidelines range of 360 months to life, this Court is not required to presume on that ground that it was reasonable. *See Pauley*, 511 F.3d at 473; *Gall*, 552 U.S. at 51. Therefore, this

---

[140] JA 927:5-19.
[141] JA 927:20-928:14.
[142] JA 928:15-929:8.

Court should find that the sentence of 480 months imposed on Mr. Baker was substantively unreasonable and accordingly vacate that sentence.

## SUMMARY OF THE ARGUMENT AS TO GARY CROMARTIE

The trial court lacked a sufficient factual basis to accept Mr. Cromartie's guilty plea. *See* Fed. R. Crim. P. 11 (b)(3). Specifically, there was no evidence within the guilty plea statement of facts that Mr. Cromartie had the requisite *mens rea* for Count 2, Conspiracy to Commit Murder in Aid of Racketeering. There is no evidence in the record that Mr. Cromartie knew of any murder conspiracy when he went to Ms. Gammon's residence and escorted her to a vehicle being driven by Donte Baker. Furthermore, during sentencing, Mr. Cromartie expressed that he did not have knowledge of any conspiracy, did not join in any conspiracy, and appeared to misunderstand the definition of a criminal conspiracy. Therefore, the trial court erred and Mr. Cromartie is entitled to plead again.

## STANDARD OF REVIEW AS TO GARY CROMARTIE

The lack of a sufficient basis for a guilty plea is reviewed for plain error. *United States v. Mastrapa*, 509 F.3d 652 (4th Cir. 2007). Under Federal Rule of Criminal Procedure 52(b), "[a] plain error that affects substantial rights may be considered [on appeal] even though it was not brought to the [trial] court's attention," and the Court may correct a plain error that was material or affected the defendant's substantial rights if the Court concludes that the "error seriously

45

affect[ed] the fairness, integrity or public reputation of judicial proceedings."

*United States v. Olano*, 507 U.S. 725, 732 (1993) (internal quotation marks

omitted); see also *United States v. Strickland*, 245 F.3d 368, 376 (4th Cir. 2001).

## ARGUMENT OF GARY GROMARTIE

### The Trial Court Lacked a Sufficient Factual Basis as to Mr. Cromartie's *Mens Rea* to Accept His Guilty Plea for Conspiracy to Commit Murder in Aid of Racketeering, Substantially Affecting His Rights.

"[A] guilty plea is a grave and solemn act to be accepted only with care and

discernment." *Brady v. United States*, 397 U.S. 742, 748 (1970). It "comprehend[s]

all of the factual and legal elements necessary to sustain a binding, final judgment

of guilt and a lawful sentence." *United States v. Broce*, 488 U.S. 563, 569 (1989).

In order for a guilty plea to be valid, the Constitution imposes "the minimum

requirement that [the] plea be the voluntary expression of [the defendant's] own

choice." *Brady*, 397 U.S. at 748. Because it operates as a waiver of important

constitutional rights, the plea must also be entered "knowingly, and intelligently,

'with sufficient awareness of the relevant circumstances and likely

consequences.'" *Bradshaw v. Stumpf*, 545 U.S. 175, 183 (2005) (quoting *Brady*,

397 U.S. at 748).  It must reflect "a voluntary and intelligent choice among the

alternative courses of action open to the defendant."  *North Carolina v. Alford*, 400

U.S. 25 (1970).  In evaluating the constitutional validity of a guilty plea, "courts

look to the totality of the circumstances surrounding [it], granting the defendant's

46

solemn declaration of guilt a presumption of truthfulness." *Walton v. Angelone*, 321 F.3d 442, 462 (4th Cir.2003) (internal citation omitted).

Pursuant to Fed. R. Crim. P. 11 (b)(3), "[b]efore entering judgment on a guilty plea, the court must determine that there is a factual basis for the plea." "The rule is intended to ensure that 'the court make clear exactly what a defendant admits to, and whether those admissions are factually sufficient to constitute the alleged crime.'" *United States v. Mastrapa*, 509 F.3d 652, 660 (4th Cir. 2007) (quoting *United States v. DeFusco*, 949 F.2d 114, 120 (4th Cir. 1991)); see also *United States v. Fountain*, 777 F.2d 351, 355 (7th Cir. 1985). The requirement is designed to "protect a defendant who is in the position of pleading voluntarily with an understanding of the nature of the charge but without realizing that his conduct does not actually fall within the charge." Fed. R. Crim. P. 11 advisory committee's notes (1966). "Because judgment is not entered until after sentencing, a court may defer the finding of a factual basis for the plea until that time." *United States v. Martinez*, 277 F.3d 517 at 522 n.4 (4th Cir. 2002). In determining whether a guilty plea has a factual basis, the district court need not rely only on the Rule 11 plea colloquy; it "may conclude that a factual basis exists from anything that appears on the record." *DeFusco*, 949 F.2d at 120.

In *United States v. Mastrapa*, the Court considered the problem of an insufficient factual basis for defendant's *mens rea* for a conspiracy. *Mastrapa*,

509 F.3d at 652. In that case, the Drug Enforcement Agency ("DEA"), through a confidential informant, arranged a transaction for the five pounds of illegal narcotics for delivery on June 28, 2005 in a hotel room in Shenandoah County, Virginia. *Id.* On June 28, shortly before the transaction, a target called the confidential source and told him that "they" would be arriving in two separate vehicles, one of which would contain the drugs and would be driven by his "cousin." *Id.* Two targets of the DEA's investigation arrived at the hotel in a blue Honda and met with the confidential informant for the purpose of seeing the money. After some back and forth between the targets and the confidential informant, the targets had Mr. Mastrapa drive his brown Ford van to the hotel. *Id.* Mr. Mastrapa and one of the targets then carried the grocery bags from his van into the hotel room. *Id.* After the confidential informant observed five pounds of methamphetamine in the grocery bags, the two targets and Mr. Mastrapa were arrested by law enforcement officers. *Id.*

Mr. Mastrapa was then indicted for conspiracy to distribute 500 grams or more of a mixture or substance containing methamphetamine, in violation of 21 U.S.C. §§ 846, 841(a)(1) and 841(b)(1)(A), and for actually distributing 500 grams or more of a mixture or substance containing methamphetamine in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(A). Shortly before trial, Mr. Mastrapa decided to plead guilty to the conspiracy count. At a hearing to accept Mr. Mastrapa's plea,

48

he admitted to driving the brown Ford van and to carrying the grocery bags into the hotel. *Id.* at 655. However, he stated that he had not, before June 28, known the targets and that he did not know that anything was in the bags other than groceries. *Id.* at 656. The magistrate judge, however, relied on an affidavit presented by a special agent of the DEA to find a factual basis for Mastrapa's plea. *Id.* That affidavit stated that through surveillance Mastrapa was observed in the brown Ford van; that he drove the van to the hotel where the transaction was consummated; and that he helped carry several grocery bags from the van to the hotel room. *Id.* On noting that Mr. Mastrapa did not specifically object to these facts, the magistrate judge stated that he would recommend acceptance of the guilty plea and several weeks later, the district judge accepted that recommendation. *Id.*

At sentencing two months later, Mr. Mastrapa again stated that he pleaded guilty only to driving the van and to carrying the grocery bags into the hotel room but that he did not know the DEA's targets or what they were doing. *Id.* Nevertheless, the district court sentenced Mr. Mastrapa to the statutory minimum of 120 months' imprisonment. *Id.* This Court first reviewed the government's only evidence on the record, which was the DEA affidavit. *Id.* After concluding the affidavit contained no admission of Mr. Mastrapa having any knowledge of a conspiracy, the Court then noted Mr. Mastrapa's consistent denial of any knowledge of the conspiracy in his statements on the record. *Id.* Based on these

facts, the Court vacated Mr. Mastrapa's conviction based on a lack of factual basis for his guilty plea.

Here, the record evidence also lacks any factual basis that Mr. Cromartie knew about any conspiracy to murder Ms. Gammon. *See United States v. Brooks*, 957 F.2d 1138, 1147 (4th Cir. 1992) (reasoning that once it has been shown that a conspiracy exists, the government must establish a connection between the defendant and the conspiracy to support conviction). The government's statement of facts reads, in relevant part:

> The defendants believed someone was relaying information about the organization to the police and they suspected Cherrie Gammon in particular of doing that. The defendants also believed that Gammon had stolen drugs from the organization, specifically she had taken drugs to resell and never resold them, so she was unable to return the money from the sales to Dante Baker. Between approximately 3:00 o'clock and 3:30 a.m., December 12th, 2010, Gary Cromartie left a vehicle parked in front of Gammon's residence, picked her up at the front door and accompanied her to the car, which was driven by Baker. The vehicle briefly returned and Gammon reentered the house, but soon thereafter left the house and got back into the vehicle.
>
> After going first to the area of the Block on Baltimore Street, Cromartie, Baker, and Johniken drove Gammon to the area of Leakin/Gwynn Falls Park and killed her with multiple gunshot wounds. The shooter was Johniken. And I would add that there's evidence that Mr. (sic) Baker claimed to be a shooter as well. The defendants left Gammon at the scene and drove to the area of Edmondson Avenue in Baltimore, where McCants was

50

on home detention. They then informed McCants what
they had done.[143]

The statement of facts establishes knowledge of the potential motivation for the
conspiracy but not knowledge of the conspiracy itself. Therefore, the statement of
facts was insufficient.

Next, an analysis of Mr. Cromartie's (and his counsel's) statements on the
record consistently demonstrates denial of any knowledge of any conspiracy to
murder Ms. Gammon. (*Id.*) At sentencing, Mr. Cromartie, his counsel, the trial
court, and, presumably, the government, agree[144] that when Mr. Cromartie walked
up to Ms. Gammon's residence and escorted her to the vehicle driven by Mr.
Baker, he did not know about any conspiracy.[145] The fact that he may have become
aware at some later time, does not in itself establish that he willingly joined in that
conspiracy. In responding to the court as to why he would have lured Ms. Gammon
out of her home for the purpose of murdering her, Mr. Cromartie said, "Honestly, I
didn't have the full intentions of what the—Baker, Johniken, or McCants had
originally had planned." Mr. Cromartie did not deny that he "lured her out" of her
home but he did not "at all," "at that moment," "fully understand what Baker and

---

[143] JA 720.
[144] There was no objection from the government regarding Mr. Cromartie's factual
assertions.
[145] JA 978-980.

Johniken had in mind."[146] At best, from the perspective of the government, by the time Mr. Cromartie realized what would happen, it was too late. Even the court appeared at least on the verge of understanding the plea implications of the insufficient statement of facts in conjunction with Mr. Cromartie's statements on the issue of his *mens rea* but stopped short of not accepting his guilty plea:

> I have suspected that you were not necessarily fully on board with the plan to murder Ms. Gammon when you induced her to come out of that house. I think you believed that harm was going to come to her, but maybe not a homicide, but, from the facts as they've emerged in this case, it's also my view that, over the course of the evening, as you've just admitted – and I give you credit for that –it did become clear to you what was going to occur.[147]

This is insufficient to support a finding that Mr. Cromartie knowingly became a member of a conspiracy to commit murder or that he conspired to commit the murder for the general purpose of maintaining or increasing a position in the enterprise engaged in racketeering activity.

The Court should use its discretion to correct this error. "To allow a district court to accept a guilty plea from a defendant who did not admit to an essential element of guilt under the charge…would surely cast doubt upon the integrity of our judicial process, particularly when Rule 11 proceedings were conducted entirely through an interpreter." *Mastrapa*, 509 F.3d at 661; *see also Olano*, 507 U.S. at 735-36. "[T]he appropriate remedy in these circumstances is to vacate

---

[146] JA 980.

[147] *Id.*

the judgment and remand to the district court for a new Rule 11 proceeding." *Id.*
(citing *United States v. Carr*, 271 F.3d 172, 180-81 (4th Cir.2001) (adopting a
"two remedy rule")). "When the error arises from the court's state of mind (such as
insufficient factual basis), the remand would be for a limited additional inquiry into
the factual basis, and when the error arises from the defendant's misperception
(such as lack of voluntariness and knowledge sufficient for the plea), the remand
would be for a new Rule 11 proceeding." *Id.*

Here, the Rule 11 hearing and sentencing record demonstrates both an error
as to the court's state of mind regarding the sufficiency of the statement of facts
*and* a misunderstanding by Mr. Cromartie such that he did not voluntarily and
knowingly enter into a guilty plea as to *any* of the counts against him. Indeed, the
record reflects a deficiency as to Mr. Cromartie's state of mind about what
generally constitutes a criminal conspiracy, thereby substantially affecting his
rights. Therefore, he is entitled to plead again.[148]

---

[148] The Advisory Committee Notes to Rule 11 state that "[t]he normal consequence
of a determination that there is not a factual basis for the plea would be for the
court to set aside the plea and enter a plea of not guilty." Fed. R. Crim. P. 11 (b)(3)
advisory committee notes (1966). "Thus, during the proceedings on remand, the
district court should consider the record as a whole, as it relates both to the
voluntariness and knowledge of the plea and to the factual basis for the plea, and
proceed appropriately upon its conclusions on these matters." *Mastrapa*, 509 F.3d
at 661.

## CONCLUSION

Mr. Baker respectfully requests that this Court reverse the District Court's denial of his motion to withdraw his guilty plea and remand the case to the District Court for trial. Alternatively, Mr. Baker requests that this Court vacate his sentence of 480 months as substantively unreasonable and remand to the District Court for re-sentencing.

Mr. Cromartie respectfully requests that this Court vacate his guilty plea and remand the case to the District Court for a new Rule 11 proceeding.

Dated:  March 27, 2014                    Respectfully submitted,


_____/s/_____
Stuart O. Simms
Matthias L. Niska
BROWN, GOLDSTEIN & LEVY, LLP
120 East Baltimore Street, Suite 1700
Baltimore, Maryland 21202
Telephone:  (410) 962-1030
Facsimile:  (410) 385-0869
sos@browngold.com
MNiska@browngold.com

*Attorneys to Appellant*
*Donte Bernard Baker*

54

_____/s/_____

Erek L. Barron
WHITEFORD, TAYLOR & PRESTON, LLP
7501 Wisconsin Avenue, Suite 700W
Bethesda, Maryland 20814
Telephone:  (301) 804-3613
Facsimile:  (301) 804-3643
ebarron@wtplaw.com

*Counsel to Appellant*
*Gary Thenor Cromartie*

## REQUEST FOR ORAL ARGUMENT

Donte Baker, by his counsel, respectfully requests oral argument on the ground that the decisional process will be aided thereby.

/s/
_____
Stuart O. Simms

## RULE 32(A) CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMITATION, TYPEFACE REQUIREMENTS, AND TYPE STYLE REQUIREMENTS

This Brief was prepared using Microsoft Office Word 2010, Times New Roman 14 point font.  It contains 12,312 words, excluding the parts of the Brief exempted by Rule 32(a)(7)(B)(iii).

/s/
_____
Stuart O. Simms

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY, that on this 27th day of March, 2014, a copy of the foregoing Appellant's Brief and Joint Appendix were delivered by the Court's ECF system; and a copy of the sealed portion of the Joint Appendix was mailed, first-class, postage prepaid to:

Robert Harding
U.S. Attorney's Office
36 South Charles Street, 4th Floor
Baltimore, Maryland  21201
(410) 209-4800

/s/
_____
Stuart O. Simms